ROADWAY EXPRESS, INC., PLAINTIFF v. MICKEY JOE HAYES AND INZONE, INC., D/B/A INZONE, DEFENDANTS v. CANDACE SUE HORN, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF MARK JOSEPH HORN, INTERVENING PLAINTIFF

No. COA05-1204

(Filed 20 June 2006)

**1. Appeal and Error— appealability—discovery orders— privilege against self-incrimination—physician-patient privilege**

Interlocutory discovery orders affected a substantial right and were immediately appealable by defendant where defendant asserted his Fifth Amendment privilege against self-incrimination and the physician-patient privilege as reasons for not producing documents and responding to plaintiff's discovery request in an action arising out of an automobile accident.

**2. Discovery— medical records—physician-patient privilege**

The trial court did not abuse its discretion in an action arising out of an automobile accident by ordering the production of defendant's medical records in the interest of justice, because: (1) the results of a blood test are not protected under the Fifth Amendment when the results of the test are neither testimonial nor communicative; and (2) defendant's medical records are not protected by the physician-patient privilege since the trial court reviewed the medical records to determine their relevance to the matter and limited the scope of production, plaintiff contends defendant's physical or mental condition contributed to the accident, and defendant asserted the sudden emergency doctrine as an affirmative defense to plaintiff's claims.

**3. Discovery— admissions—interrogatories—medications at time of automobile accident**

The trial court erred by ordering defendant to respond to plaintiff's second request for admissions and interrogatories relating to factual information on medications he may have been under the influence of at the time of an automobile accident, because defendant is entitled to assert his Fifth Amendment privilege to protect himself from self-incrimination in relation to prescription drugs defendant may have been under the influence of at the time of the accident. However, if the trial court determines such responses are essential to evaluate the application of the sudden emergency doctrine, the trial court must hold that defendant's choice to invoke his rights not to respond to the request for admissions and interrogatories precludes his assertion of the sudden emergency defense to plaintiff's allegations.

Appeal by Defendant Mickey Joe Hayes from orders entered 17 June and 30 June 2005 by Judge Anderson D. Cromer and Judge Ronald E. Spivey, respectively, in Superior Court, Forsyth County. Heard in the Court of Appeals 9 May 2006.

*Womble, Carlyle, Sandridge & Rice by Jack M. Strauch, for plaintiff-appellee Roadway Express, Inc.*

*Teague, Rotenstreich & Stanaland, LLP by Kenneth B. Rotenstreich and Paul A. Daniels, for the defendant-appellant Mickey Joe Hayes.*

*Brian E. Gates for defendant-appellee Inzone.*

*Law Offices of Jonathan S. Dills, P.A., by Jonathan S. Dills, for intervening plaintiff-appellee Constance Sue Horn.*

WYNN, Judge.

The Fifth Amendment provides a shield against self-incrimination. U.S. CONST. amend. V. In this case, Defendant argues that the Fifth Amendment protects him from producing (1) his medical records and (2) factual information regarding medications that he may have been under the influence of at the time of the accident. We uphold the order to produce his medical records but reverse the order compelling him to disclose factual information regarding his use of medications.

## ROADWAY EXPRESS, INC. v. HAYES

[178 N.C. App. 165 (2006)]

The facts indicate that on 7 March 2004, Defendant Mickey Hayes's vehicle collided with a tractor trailer driven by Mark Joseph Horn and owned by Plaintiff Roadway Express, Inc. As a result of the collision, the tractor trailer struck a bridge guardrail causing the tractor to detach from the trailer, fall off the bridge and overturn before landing on an embankment below the bridge. Mr. Horn died at the scene of the accident.

Plaintiffs Roadway Express, Inc. and Constance Horn, widow of the truck driver, brought an action against Mr. Hayes and Inzone, Inc. Plaintiffs alleged that Mr. Hayes was legally intoxicated from beverages that he had consumed at Inzone nightclub/sports bar from which Plaintiffs sought recovery based on its alleged willful, wanton, and reckless disregard for the rights of others.

During discovery, Plaintiff Roadway Express requested all medical records regarding Defendant Hayes's medical treatment after the accident. Defendant objected to the discovery request, arguing that his medical records were protected by the physician-patient privilege and his Fifth Amendment right against self-incrimination.

The trial judge ordered Defendant to produce the requested medical records under seal and conducted an *in camera* inspection. Afterwards, on 17 June 2005, the trial judge ordered Defendant to provide copies of the records to Plaintiff on the condition that:

> The records and the information contained therein are not to be shared with anyone other than experts retained by the parties (but not if such experts are also retained by the State to assist with the criminal prosecution of Hayes arising out of the subject collision).

Plaintiff also served a set of admissions on Defendant to:

1. Admit that on March 6, 2004, you took the prescription medication diazepam.

2. Admit that on March 7, 2004, you took the prescription medication diazepam.

3. Admit that during the early morning of March 7, 2004, you were under the influence of the prescription medicine diazepam.

4. Admit that on March 7, 2004, the prescription medication diazepam was present in your system.

5. Admit that you consumed alcoholic beverages during the late evening of March 6, and the early morning of March 7, 2004, while knowing diazepam was present in your system.

Additionally, Plaintiff, through interrogatories, asked whether Defendant had been taking any prescription medications at the time of the accident, including diazepam. Defendant refused to respond to Plaintiff's request for admissions or interrogatories relating to any prescription drugs he may have been under the influence of at the time of the accident, arguing that such information was protected under the physician-patient privilege and the Fifth Amendment.

On 23 June 2005, Plaintiff filed a motion to compel production of Defendant's responses to Plaintiff's request for admissions and interrogatories. On 30 June 2005, the trial judge granted Plaintiff's motion to compel and ordered Defendant to serve complete responses to Plaintiff's request for admissions and interrogatories.

[1] From the 17 June 2005 order to produce his medical records, and the 30 June 2005 order to respond to Plaintiff's request for admissions and interrogatories, Defendant appeals. But we note that discovery orders are interlocutory and therefore not immediately appealable unless they affect a substantial right. *Isom v. Bank of America, N.A.*, 177 N.C. App. ——, ——, 628 S.E.2d 458, 461 (2006). However, "when . . . a party asserts a statutory privilege which directly relates to the matter to be disclosed under an interlocutory discovery order, and the assertion of such privilege is not otherwise frivolous or insubstantial, the challenged order affects a substantial right[.]" *Sharpe v. Worland*, 351 N.C. 159, 166, 522 S.E.2d 577, 581 (1999). Moreover, a trial judge's ruling requiring a party to provide evidence over a Fifth Amendment objection is also immediately appealable. *See Staton v. Brame*, 136 N.C. App. 170, 523 S.E.2d 424 (1999) (reversing trial court's order compelling Defendant's testimony in civil action where Defendant asserted Fifth Amendment privilege against self-incrimination). Here, because Defendant Hayes asserts his Fifth Amendment privilege against self-incrimination and the physician-patient privilege as reasons for not producing documents and responding to Plaintiff's discovery requests, the orders on appeal are immediately appealable.

---

The issues on appeal are (I) Do the Fifth Amendment privilege against self-incrimination and the physician-patient privilege shield Defendant from producing "any and all records related to any medical

**ROADWAY EXPRESS, INC. v. HAYES**

[178 N.C. App. 165 (2006)]

treatment that [he] received as a result of the automobile accident" and (II) Does the Fifth Amendment shield Defendant from providing factual information regarding medications that he may have been under the influence of at the time of the accident?

I.

[2] Fifth Amendment protection applies in any type of proceeding, whether it is criminal, civil, administrative, investigatory, or adjudicatory. *Maness v. Meyers*, 419 U.S. 449, 463-64, 42 L. Ed. 2d 574, 586-87 (1975). The protection exists not only for evidence which may directly support a criminal conviction, but for "information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution." *Id.* at 461, 42 L. Ed. 2d at 585 (citation omitted). However, the Fifth Amendment privilege only applies to testimonial or communicative acts. *Schmerber v. California*, 384 U.S. 757, 761, 16 L. Ed. 2d 908, 914 (1966).

In *Schmerber*, the United States Supreme Court held that blood test evidence was neither testimonial nor communicative and therefore the evidence was admissible. *Id.* at 765, 16 L. Ed. 2d at 916-17. "[B]oth federal and state courts have usually held that [the Fifth Amendment] offers no protection against compulsion to submit to fingerprinting, photographing, or measurements . . . the privilege is a bar against compelling 'communications' or 'testimony', but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it." *Id.* at 764, 16 L. Ed. 2d at 916.

Indeed, "North Carolina has long recognized the distinction between compulsory testimonial evidence and compulsory physical disclosure." *State v. Strickland*, 276 N.C. 253, 260, 173 S.E.2d 129, 133 (1970).

'The established rule in this jurisdiction is that '(t)he scope of the privilege against self-incrimination, in history and in principle, includes only the process of testifying by word of mouth or in writing, i.e., the process of disclosure by utterance. It has no application to such physical evidential circumstances as may exist on the accused's body or about his person."

*Id.* (quoting *State v. Paschal*, 253 N.C. 795, 797, 117 S.E.2d 749, 750-51 (1961)).

The facts of this case are analogous to those in *Schmerber*. The medical records sought by Plaintiff include a hospital lab analysis and a State Bureau of Investigation lab analysis of Defendant's blood taken after the accident. As in *Schmerber*, the results of Defendant's blood test are not protected under the Fifth Amendment because the results of the test are neither testimonial nor communicative. Under the facts of this case, Defendant's Fifth Amendment right against self-incrimination does not shield him from producing his medical records.

Likewise, Defendant's medical records are not protected by the physician-patient privilege. Section 8-53 of the North Carolina General Statutes provides that "[n]o person, duly authorized to practice physic or surgery, shall be required to disclose any information which he may have acquired in attending a patient in a professional character, and which information was necessary to enable him to prescribe for such patient . . . or to do any act for him as a surgeon[.]" N.C. Gen. Stat. § 8-53 (2005). Medical records are covered by the statute to the extent that the records contain entries made by physicians and surgeons, or under their direction, that include information and communications obtained by the doctor for the purpose of providing care to the patient. *Sims v. Charlotte Liberty Mut. Ins. Co.*, 257 N.C. 32, 38, 125 S.E.2d 326, 331 (1962).

The physician-patient privilege is strictly construed and the patient bears the burden of establishing the existence of the privilege and objecting to the introduction of evidence covered by the privilege. *Mims v. Wright*, 157 N.C. App. 339, 342, 578 S.E.2d 606, 609 (2003). The physician-patient privilege is not an absolute privilege, and it is in the trial court's discretion to compel the production of evidence that may be protected by the privilege if the evidence is needed for a proper administration of justice. *See* N.C. Gen. Stat. § 8-53. "Judges should not hesitate to require the disclosure where it appears to them to be necessary in order that the truth be known and justice be done." *Sims*, 257 N.C. at 39, 125 S.E.2d at 331.

Here, the trial judge methodically ordered Defendant to produce his medical records. In the initial order ordering the production of Defendant's medical records under seal for an *in camera* review, the trial judge limited the scope of the production by requesting only those medical records that mention or reflect the results of any tests performed to determine Defendant's blood alcohol content and the presence of controlled substances in his body. It was only after the trial judge reviewed the medical records and determined their rele-

vance to the matter that he ordered Defendant to produce them to Plaintiff. Even in the order requiring Defendant to produce the medical records, the trial judge limited the scope of production, providing "[t]he records and the information contained therein are not to be shared with anyone other than experts retained by the parties (but not if such experts are also retained by the State to assist with the criminal prosecution of Hayes arising out of the subject collision.)"

Defendant's reliance on *Mims* to support his argument that the trial court erred in ordering the production of his medical records in violation of the physician-patient privilege is misplaced. In *Mims*, this Court held that the trial judge abused his discretion in ordering the production of the defendant's medical records where there was no evidence in the record that they might have "[led] to a justifiable conclusion that the interests of justice outweighed the protected privilege." *Mims*, 157 N.C. App. at 344, 578 S.E.2d at 610. Unlike the plaintiffs in *Mims*, Plaintiff in this case contends Defendant's physical or medical condition contributed to the accident. *Id.* Moreover, Defendant in this case has asserted the sudden emergency doctrine as an affirmative defense to Plaintiff's claims, which places his medical condition at the time of the accident into question. Thus, in light of Plaintiff's allegations and Defendant's affirmative defense to those allegations, there is evidence in the record that may justify the disclosure of Defendant's medical records in the interest of justice.

"The decision that disclosure is necessary to a proper administration of justice 'is one made in the discretion of the trial judge, and the defendant must show an abuse of discretion in order to successfully challenge the ruling.'" *State v. Smith*, 347 N.C. 453, 461, 496 S.E.2d 357, 362 (1998) (citation omitted). As we can discern no abuse of the trial court's discretion in ordering the production of Defendant's medical records in the interest of justice, we affirm the 17 June 2005 order compelling the production of Defendant's medical records.

II.

[3] Defendant further contends the Fifth Amendment protects him from having to respond to inquiries under the request for admissions and second set of interrogatories regarding factual information about his use of alcohol, diazepam, and any other medications. We agree.

The Fifth Amendment protects individuals from being compelled to testify in a way that could incriminate him or might subject him to

fines, penalties, or forfeiture. *State v. Pickens*, 346 N.C. 628, 637, 488 S.E.2d 162, 166 (1997). To determine whether the Fifth Amendment privilege applies, the trial court must evaluate whether, given the implications of the question and the setting in which it was asked, a real danger of self-incrimination by the witness exists. *Id.*, 488 S.E.2d at 167. The court should only deny the claim of Fifth Amendment privilege if there is no possibility of such danger. *Id.* .

In this case, we cannot say that there is no possibility of danger for self-incrimination by Defendant in responding to Plaintiff's request for admissions and interrogatories, which relate to the prescription drugs Defendant may have been under the influence of at the time of the accident. Plaintiff argues that the trial judge's statement in the order compelling Defendant to respond to the discovery requests that "the information is not to be shared with anyone other than experts retained by the parties (but not if such experts are also retained by the State to assist with the criminal prosecution of Hayes arising out of the subject collision) and persons assisting with the prosecution or defense of the action[,]" cures any concerns about the production of this evidence in any other proceeding, including a criminal matter. We hold, however, that this limitation is insufficient to ensure that Defendant's Fifth Amendments' rights are protected and that there is no possibility of danger of self-incrimination. We, therefore, conclude the trial court erred when ordering Defendant to respond to Plaintiff's second request for admissions and interrogatories. Accordingly, we reverse the trial court's 30 June 2005 order compelling Defendant to respond to Plaintiff's second request for admissions and second set of interrogatories.

Notwithstanding, Defendant's refusal to respond to Plaintiff's request for admissions and interrogatories related to any prescription drugs he may have been under the influence of at the time of the accident may preclude him from asserting certain affirmative defenses. *McKillop v. Onslow County*, 139 N.C. App. 53, 62-63, 532 S.E.2d 594, 600-01 (2000). This Court has held that "if . . . a defendant pleads an affirmative defense[,] he should not have it within his power to silence his own adverse testimony when such testimony is relevant to the . . . defense." *Cantwell v. Cantwell*, 109 N.C. App. 395, 397, 427 S.E.2d 129, 130 (1993).

In *Cantwell*, the plaintiff was asked about matters that related to her alleged adulterous activities, and she asserted her Fifth Amendment privilege against self-incrimination. This Court held that she could properly assert the Fifth Amendment as a basis for not tes-

tifying regarding the alleged adultery, but that she could not maintain her alimony claim if she refused to testify. 109 N.C. App. at 398, 427 S.E.2d at 131. The Court reasoned that adultery bars alimony and, therefore, without the plaintiff's testimony, she was not providing the judge with enough information to make a determination about alimony. *Id.*

This Court applied similar reasoning in *Qurneh v. Colie*, 122 N.C. App. 553, 471 S.E.2d 433 (1996). In *Qurneh*, the father sought to obtain custody of his child, but refused to testify about his illegal drug use based on his right against self-incrimination. The Court ruled that the trial court correctly found that the father's refusal to answer questions about his illegal drug involvement denied the trial court the ability to make a determination of whether he was fit to have custody of his child. This Court held that the father could not be compelled to testify about his illegal substance abuse, but that he could not also maintain his claim for custody without testifying on this issue. *Id.* at 558, 471 S.E.2d at 436. "The privilege against self-incrimination is intended to be a shield and not a sword." *Id.*[1]

In the case *sub judice*, Defendant asserted the affirmative defense of sudden emergency.[2] Under the sudden emergency doctrine, a person is not held to the ordinary standard of care, but to the same standard of care that an ordinarily prudent person would have used when faced with a similar emergency. *Sparks v. Willis*, 228 N.C. 25, 28, 44 S.E.2d 343, 344-45 (1947). Defendant's state of mind, including whether he was under the influence of prescription drugs, at the time of the accident must be evaluated to determine whether Defendant had the ability to act as an ordinarily prudent person would have acted at the time of the accident.

Upon remand for trial of this matter, our holding permits Defendant to assert his Fifth Amendment privilege to protect himself from self-incrimination in responding to Plaintiff's request for admissions and interrogatories relating to factual information on medications he may have been under the influence of at the time of the accident. However, at trial, if the trial court determines such responses

---

1. Additionally, this Court has recognized that "[t]he finder of fact in a civil cause may use a witness' invocation of his Fifth Amendment privilege against self-incrimination to infer that his truthful testimony would have been unfavorable to him." *McKillop*, 139 N.C. App. at 63-64, 532 S.E.2d at 601.

2. Defendant also asserted contributory negligence as an affirmative defense; however, that defense does not appear to be affected by Defendant's invocation of his Fifth Amendment rights.

are essential to evaluate the application of the sudden emergency doctrine, the trial court must hold that Defendant's choice to invoke his rights not to respond to the request for admissions and interrogatories precludes his assertion of the sudden emergency defense to Plaintiff's allegations.

Affirmed in part; reversed in part.

Judges GEER and STEPHENS concur.