MURPHY, Judge.
 

 *78
 
 This case requires that we examine the relationship between a public document entitled an "Opinion and Award" ("Award") and a workers' compensation claimant's privacy interest in the personal medical information relevant to the resolution of his claim. Every year, the North Carolina Industrial Commission enters hundreds of Awards, which are the written records of decision for adjudicated workers' compensation claims. After these Awards are entered, they are uploaded to a publicly accessible and searchable online database.
 
 [1]
 
 Due to the fact that workers' compensation claims arise from physical injuries suffered at work, the evidentiary findings contained within an Award often directly address a claimant's medical conditions and employment history.
 

 In prior proceedings before the Industrial Commission, Plaintiff unsuccessfully moved to have his entire case file sealed. He complained that due to the Commission's policy to make Awards available to the public online, Plaintiff's personal and medical information (which becomes part of that Award) will be disseminated and his privacy interest in avoiding the disclosure of this information
 
 *594
 
 will be compromised. On appeal, Plaintiff argues that he has a privacy interest rooted in statute and the U.S. Constitution, and contends this interest can only be protected by a judicial order that preemptively seals his entire workers' compensation case file, including any future Award entered for his claim. After careful review, we conclude that there is no statutory or constitutional basis that obligates the Industrial Commission to seal Plaintiff's workers' compensation file.
 

 BACKGROUND
 

 On 29 May 2012, Vincent Mastanduno ("Plaintiff"), while employed as a truck driver, slipped and fell on a wet floor while moving a pallet
 
 *79
 
 during work, injuring his lower back. On 11 September 2012, Plaintiff filed a
 
 Notice of Accident
 
 with the Industrial Commission to obtain workers' compensation benefits. His employer at the time, Defendant National Freight Industries, filed a Form 60
 
 Employer's Admission of Employee's Right to Compensation
 
 on 19 November 2012 for temporary total compensation in the amount of $740.56 per week. National Freight Industries was covered by a workers' compensation insurance policy through American Zurich Insurance Company (collectively "Defendants").
 

 Several years later on 14 March 2016, Defendants filed a Form 33 with the Industrial Commission requesting that Plaintiff's workers' compensation claim be assigned for a hearing. Defendants alleged that Plaintiff was no longer disabled and refused to cooperate with medical treatment authorized and paid for by Defendants. Plaintiff filed his response, denying that he had not been compliant with Defendant's direction for medical care and further claiming that he remained disabled. On 29 March 2016, the Industrial Commission entered an order permitting Plaintiff's counsel at the time to withdraw. Plaintiff then proceeded pro se. Plaintiff's initial hearing was set for 12 July 2016, and the matter was assigned to Deputy Commissioner Tyler Younts.
 

 On 6 June 2016, prior to Plaintiff's July 2016 evidentiary hearing, Plaintiff moved to have all information regarding his hearing sealed "so that it is not a matter of public record." Deputy Commissioner Younts subsequently entered an order denying Plaintiff's request to seal his file, concluding that "Plaintiff's Workers' Compensation claim file is not a public record[,]" and "to the extent that certain Orders and Awards of the Commission are public records, Plaintiff has provided no factual or legal basis for the relief sought." Plaintiff then requested Deputy Commissioner Younts to reconsider his previous motion and a conference call was held on 24 June 2016. Plaintiff expressed various privacy concerns associated with the potential use of his personal medical information. Deputy Commissioner Younts again denied Plaintiff's request to seal his file, concluding:
 

 Nevertheless, it remains the case that all injured workers involved in litigation before the Industrial Commission operate under the same privacy rules. Thus, the undersigned finds insufficient basis for the extraordinary relief Plaintiff seeks.
 

 Plaintiff then appealed Deputy Commissioner Younts' denial to the Full Commission. Because the Deputy Commissioner's order was
 
 *80
 
 interlocutory, Plaintiff was required to submit reasons warranting immediate review by the Full Commission. Plaintiff's primary privacy concern is that Awards of the Industrial Commission are made available to the public and immediately placed online, and, therefore, third parties could use personal and medical information included therein to his detriment.
 
 [2]
 
 Plaintiff also alleged that the denial of his motion to seal infringed on his Ninth and Fourteenth Amendment rights under the U.S. Constitution.
 

 On 10 April 2017, Plaintiff's Motion to Seal was heard by the Full Commission, and on 22 May 2017 the Commission denied Plaintiff's
 
 *595
 
 motion. The Full Commission concluded that pursuant to N.C.G.S. § 97-92(b), the Opinions and Awards of the Commission are public records, but the medical records and other evidence upon which an Award would be premised are not. The Commission also concluded that "Plaintiff has offered no evidence or legal argument which would justify his claim being treated differently than that of any other injured worker who is seeking benefits under the Act." Finally, the Full Commission's order correctly recognized that it did not have jurisdiction to rule on Plaintiff's Ninth and Fourteenth Amendment arguments because the Commission does not have jurisdiction to rule on constitutional issues.
 
 [3]
 
 Plaintiff timely appealed the Full Commission's 22 May 2017 denial of his Motion to Seal.
 

 Represented by counsel on appeal, Plaintiff argues that the Industrial Commission was obligated to seal his entire file upon request because "[p]ursuant to North Carolina statutory law and federal Constitutional law, a person has a right to privacy with respect to his or her medical information."
 

 GROUNDS FOR APPELLATE REVIEW
 

 Plaintiff's appeal is interlocutory as the Full Commission's order does not finally dispose of all issues in the matter. However, "immediate appeal may be taken from an interlocutory order when the challenged order affects a substantial right of the appellant that would be lost
 
 *81
 
 without immediate review."
 
 France v. France
 
 ,
 
 209 N.C. App. 406
 
 , 411,
 
 705 S.E.2d 399
 
 , 404-05 (2011) (citation and alteration omitted). "No hard and fast rules exist for determining which appeals affect a substantial right. Rather, such decisions usually require consideration of the facts of the particular case."
 
 Estrada v. Jaques
 
 ,
 
 70 N.C. App. 627
 
 , 640,
 
 321 S.E.2d 240
 
 , 249 (1984) (citation omitted).
 

 Plaintiff argues that a substantial right is affected because any Award in this matter will necessarily contain some of Plaintiff's medical information and this information will be made available online at the time the Award is entered. Thus, because the Full Commission has denied his motion to seal on the grounds that there is no legal basis for Plaintiff's requested relief, Plaintiff's privacy rights will be lost absent review by this court. Plaintiff cites several cases in support of his right to appellate review.
 
 See
 

 France
 
 ,
 
 209 N.C. App. at 411
 
 ,
 
 705 S.E.2d at 405
 
 ("Absent immediate review, documents that have been ordered sealed will be unsealed, and proceedings will be held open to the public. Because the only manner in which Plaintiff may prevent this from happening is through immediate appellate review, we hold that a substantial right of Plaintiff is affected....");
 
 Velez v. Dick Keffer Pontiac GMC Truck, Inc
 
 .,
 
 144 N.C. App. 589
 
 , 592,
 
 551 S.E.2d 873
 
 , 875 (2001) ("While certainly if the Financial Privacy Act was implicated here, it would raise a substantial right....").
 

 For the purpose of determining whether the challenged order affects a substantial right, we need not definitively decide at the outset whether Plaintiff's personal or medical information would fall within the scope of any specific statutory or constitutional privacy protections. Rather, it is sufficient that absent immediate review, some of Plaintiff's personal and medical information will be made available to the public upon entry of a final Award and that some of this information might be subject to statutory and constitutional privacy protections.
 
 See
 

 Woods v. Moses Cone Health Sys
 
 .,
 
 198 N.C. App. 120
 
 , 124,
 
 678 S.E.2d 787
 
 , 791 (2009) (finding the production of documents which might be protected by statute to affect a substantial right). Plaintiff has therefore demonstrated that the order denying his motion to seal by the Full Commission affects a substantial right.
 

 Finally, since the Industrial Commission did not have jurisdiction to pass upon Plaintiff's constitutional privacy claims, it is appropriate for this Court, as the first destination for the dispute in the General Court of Justice, to address these constitutional arguments even though they were not passed upon below.
 
 See
 

 Redmond
 
 , 369 N.C. at 497, 797 S.E.2d at 280 ("When an appeal lies
 
 *596
 
 directly to the Appellate Division from an
 
 *82
 
 administrative tribunal, in the absence of any statutory provision to the contrary a constitutional challenge may be raised for the first time in the Appellate Division as it is the first destination for the dispute in the General Court of Justice.").
 

 ANALYSIS
 

 Plaintiff argues that he has "a Constitutional and statutory right to confidentiality over his private medical information." We initially note that Plaintiff relies heavily on the United States Supreme Court's decision in
 
 Whalen v. Roe
 
 ,
 
 429 U.S. 589
 
 ,
 
 97 S.Ct. 869
 
 ,
 
 51 L.Ed.2d 64
 
 (1977), to support his contention that an Award of the Industrial Commission implicates a constitutional "privacy right." However, the U.S. Supreme Court has not explicitly recognized a constitutional
 
 right
 
 to keep one's personal information private. Rather,
 
 Whalen
 
 and its progeny stand for the proposition that there
 
 may
 
 be a "constitutional privacy 'interest in avoiding disclosure of personal matters.' "
 
 See
 

 Nat'l Aeronautics & Space Admin. v. Nelson
 
 ,
 
 562 U.S. 134
 
 , 147,
 
 131 S.Ct. 746
 
 , 756,
 
 178 L.Ed.2d 667
 
 (2011) (citing
 
 Whalen
 
 ,
 
 429 U.S. at 599-600
 
 ,
 
 97 S.Ct. at
 
 876 ;
 
 Nixon v. Administrator of General Services
 
 ,
 
 433 U.S. 425
 
 , 457,
 
 97 S.Ct. 2777
 
 , 2797,
 
 53 L.Ed.2d 867
 
 (1977) ). With this constitutional backdrop in mind, we first address Plaintiff's claim that he has a statutory right to have his workers' compensation file sealed.
 

 A. Statutory Right to Privacy
 

 An individual's privacy interest in their personal information may be protected by statute. Our Supreme Court has recognized that although the Public Records Act "provides for liberal access to public records," the General Assembly may dictate "that certain documents will not be available to the public."
 
 Virmani v. Presbyterian Health Services Corp
 
 .,
 
 350 N.C. 449
 
 , 462,
 
 515 S.E.2d 675
 
 , 685 (1999) ;
 
 see also
 
 N.C.G.S. § 131E-95(b) (2017) ("The proceedings of a medical review committee, the records and materials it produces and the materials it considers shall be confidential and not considered public records within the meaning of G.S. 132-1...."); N.C.G.S. § 7B-2901(d) (2017) ("The court's entire record of a proceeding involving consent for an abortion of an unemancipated minor ... is not a matter of public record...."); N.C.G.S. § 132-1.4(a) (2017) ("Records of criminal investigations conducted by public law enforcement agencies ... are not public records...."). With respect to Workers' Compensation proceedings, the General Assembly has already provided that certain records of the Industrial Commission that are not Awards are not public records:
 

 The records of the Commission
 
 that are not awards
 
 under G.S. 97-84 and that are not reviews of awards under
 
 *83
 
 G.S. 97-85, insofar as they refer to accidents, injuries, and settlements are not public records under G.S. 132-1 and shall not be open to the public, but only to the parties satisfying the Commission of their interest in such records and the right to inspect them, and to State and federal agencies pursuant to G.S. 97-81.
 

 N.C.G.S. § 97-92(b) (2017) (emphasis added).
 

 Turning to the instant case, because of N.C.G.S. § 97-92(b), Plaintiff's medical records and any other documents that are not Awards which refer to accidents and injuries are already shielded from public disclosure. Any order to seal these records would be superfluous as they are already, in effect, sealed by statute. With respect to the Awards of the Industrial Commission, the General Assembly has not provided any exemption from the Public Records Act. If we were to adopt Plaintiff's position and instruct the Industrial Commission to seal a yet to be entered Award, then we would contravene the legislative intent expressed in N.C.G.S. § 97-92(b). Specifically, applying the doctrine of
 
 expressio unius est exclusio alterius
 
 to § 97-92(b), we conclude that by expressly listing the subset of records of the Industrial Commission that are exempted from the Public Records Act (i.e. records that are not Awards), the legislature intended that Awards of the Industrial Commission are to be public records.
 
 See
 

 Morrison v. Sears, Roebuck & Co
 
 .,
 
 319 N.C. 298
 
 , 303,
 
 354 S.E.2d 495
 
 , 498 (1987) ("[T]he doctrine of
 
 expressio unius est exclusio alterius
 
 provides that the mention of such specific exceptions implies the exclusion of others.").
 

 *597
 
 Plaintiff also points us to N.C.G.S. §§ 8-53 and 122C-52 to support his position that his private medical information is not a matter of public record. N.C.G.S. § 8-53, which codifies the physician-patient privilege, is a qualified evidentiary privilege that is waivable by the patient,
 
 Adams v. Lovette
 
 ,
 
 105 N.C. App. 23
 
 ,
 
 411 S.E.2d 620
 
 (1992), and must yield in some instances when certain medical information "is necessary to a proper administration of justice." N.C.G.S. § 8-53 (2017). More importantly, the mere existence of the physician-patient privilege has no bearing on whether an Award of the Industrial Commission is a public record or whether the Commission is statutorily obligated to seal any Award that makes reference to a claimant's medical information. Turning to N.C.G.S. § 122C-52, this statute does provide that confidential information acquired in attending or treating a client is not a public record. However, Plaintiff's reliance is inapposite because § 122C-52 only applies to services for the "mentally ill, the developmentally disabled, or substance abusers." N.C.G.S. § 122C-3(14) (2017). Plaintiff
 
 *84
 
 makes no argument addressing how any of these mental health services are relevant to his workers' compensation claim arising from a lower back injury.
 

 Plaintiff next cites a federal statute relevant to health information privacy, the Health Insurance Portability and Accountability Act of 1996 (HIPAA).
 
 See
 
 Health Insurance Portability and Accountability Act of 1996 Pub.L. 104-191,
 
 110 Stat. 1936
 
 , (1996). Although a primary goal of HIPAA is to assure that an individual's health information is properly protected from unauthorized disclosure, Plaintiff has failed to recognize that the HIPAA Privacy Rule does not apply to the Industrial Commission because they are not a "covered entity."
 
 45 C.F.R. § 160.103
 
 (2014). Furthermore, HIPAA regulations expressly permit covered entities, such as a patient's doctor, to disclose protected health information to workers' compensation agencies without first obtaining patient authorization.
 
 See
 

 45 C.F.R. § 164.512
 
 (a) (2016).
 

 In sum, none of the above cited statutory provisions support Plaintiff's position that he possesses a statutory privacy right in his personal medical information that obligates the Industrial Commission to seal his workers' compensation case file on request, including any Award. Pursuant to N.C.G.S. § 97-92(b), Plaintiff's medical records are already exempted from the Public Records Act. Regarding Plaintiff's request to seal any Award entered by the Commission, we again emphasize the General Assembly is the body vested with the authority to determine which kinds of otherwise public records "shall be shielded from public scrutiny."
 
 France
 
 ,
 
 209 N.C. App. at 413
 
 ,
 
 705 S.E.2d at 406
 
 . While the General Assembly could have exempted the Awards of the Industrial Commission from the Public Records Act, they did not. "Absent clear statutory exemption or exception, documents falling within the definition of public records in the Public Records Law must be made available for public inspection."
 
 Virmani
 
 ,
 
 350 N.C. at 462
 
 ,
 
 515 S.E.2d at 685
 
 (citation and quotation marks omitted).
 

 B. Constitutional Right to Privacy
 

 Plaintiff also contends "even if the Public Records Act applied to this matter, this act does not trump an individual's Constitutional right to privacy over his or her private health information." As the U.S. Supreme Court did in
 
 Whalen
 
 and
 
 National
 

 Aeronautics & Space Administration
 
 , we will assume for present purposes that the Industrial Commission's refusal to seal Plaintiff's case file implicates a privacy interest of constitutional significance
 
 . See
 

 Nat'l Aeronautics & Space Admin.
 
 ,
 
 562 U.S. at 147
 
 ,
 
 131 S.Ct. at 756
 
 ("As was our approach in
 
 Whalen
 
 , we will assume for
 
 *85
 
 present purposes that the Government's challenged inquiries implicate a privacy interest of constitutional significance.").
 

 Initially, our review of the Industrial Commission's decision to not preemptively seal Plaintiff's Award must consider the "context" of a workers' compensation proceeding.
 
 See
 

 id
 
 . at 148,
 
 131 S.Ct. at 757
 
 ("[J]udicial review of the Government's challenged inquiries must take into account the context in which they arise."). The Workers' Compensation Act was enacted in 1929, and its purpose was not only to offer a swift and certain remedy
 
 *598
 
 for an injured worker, but also to ensure a limited and determinate liability for employers.
 
 See
 
 S.L. 1929-120. In 2017, the Industrial Commission had exclusive original jurisdiction over 64,000 filed workers' compensation claims, and approximately 1,800 claims were scheduled for hearings before a Deputy Commissioner. Over 400 of these claims were appealed to the Full Commission.
 
 [4]
 
 Our assessment of the constitutionality of the challenged publicizing of medical information in an Award must take into account the crucial role the Industrial Commission plays for workers and the State's economy, as well as the sheer magnitude of claims that must be adjudicated in a timely manner.
 

 Next, we must weigh Plaintiff's privacy interests implicated by the public dissemination of an Award against the public interest.
 
 Nixon
 
 ,
 
 433 U.S. at 458
 
 , 97 S.Ct. at 2798 ("[A]ny intrusion must be weighed against the public interest in subjecting the Presidential materials of appellant's administration to archival screening.");
 
 see also
 

 France
 
 ,
 
 209 N.C. App. at 417
 
 ,
 
 705 S.E.2d at 408
 
 (holding plaintiff's claim to be without merit since he "fail[ed] to show that any such right to privacy outweighs the qualified right of the public to open proceedings").
 

 As discussed
 
 supra
 
 , by not exempting the Awards of the Industrial Commission from the Public Records Act, our legislature has determined that these records are of special public interest and are to be made available in their original form. The Industrial Commission's policy of providing web access to final Awards is a reasonable, cost-effective manner of making these records available for public inspection. Furthermore, N.C.G.S. § 97-84 expresses other important public interests at stake:
 

 The case shall be decided and findings of fact issued based upon the preponderance of the evidence in view of the entire record. The award, together with a statement of
 
 *86
 
 the findings of fact, rulings of law, and other matters pertinent to the questions at issue shall be filed with the record of the proceedings....
 

 N.C.G.S. § 97-84 (2017). We recognize that the findings of fact of an award will often include potentially sensitive information that might otherwise be considered private, such as a claimant's identity, a claimant's employment history, a description of the injury suffered at work, and the effects of the injury on the claimant's physical and mental capabilities. However, the inclusion of pertinent and relevant information such as this is necessary because it ensures that workers' compensation claims are resolved impartially with well-reasoned decisions. Not only does this serve the public's interest in government transparency, but, without this information, our ability to conduct effective appellate review would be significantly impaired.
 
 See
 

 Wilkes v. City of Greenville
 
 ,
 
 369 N.C. 730
 
 , 746,
 
 799 S.E.2d 838
 
 , 849 (2017) ("[T]he Commission must make specific findings that address the 'crucial questions of fact upon which plaintiff's right to compensation depends.' ").
 

 Regarding Plaintiff's asserted privacy interests, we are not unsympathetic to his concerns regarding the disclosure and potential use of personal information contained in an Award. To illustrate his concerns, Plaintiff submitted a publicly available final Opinion and Award from another workers' compensation claim.
 
 [5]
 
 Plaintiff directs our attention to certain findings of this Award which went beyond the details of the worker's accident, indicating that the worker experienced episodes of crying, panic attacks, and was diagnosed with Post-Traumatic Stress Disorder (PTSD). Sensitive as these topics may be, Plaintiff wholly overlooks the crucial role this personal medical information had in the Commission's resolution of the claim. Specifically, crying and panic attacks were some of the symptoms the claimant presented to her treating physicians after the workplace accident. Furthermore, based on these symptoms, the claimant's psychiatrist ultimately diagnosed her with PTSD, and this evidence supported the Commission's conclusion that
 
 *599
 
 the claimant's PTSD was a compensable injury.
 

 Plaintiff nevertheless argues, "It is inconceivable that a 'proper administration of justice' would require the Commission (which is not a court, and thus not subject to open courts provisions) to disseminate the Plaintiff's protected, private health information to the entire world via the Internet." This argument fails to grasp the role of an Award in
 
 *87
 
 our Workers' Compensation system. The Industrial Commission does not make its Awards available online merely because it is necessary for the proper administration of justice, but a claimant's Award is made publicly available because this document is, as a matter of law, an official public record.
 

 Plaintiff's constitutional privacy argument also overlooks critical distinctions between the facts of his case and those present in
 
 Whalen
 

 .
 
 In
 
 Whalen
 
 , a New York statute that required physicians to identify patients obtaining certain prescription drugs having potential for abuse was challenged as violating the plaintiff's privacy rights.
 
 Whalen
 
 ,
 
 429 U.S. at 592
 
 , 97 S.Ct. at 873. Doctors were required to disclose the name, age, and address of the patients for which they prescribed Schedule II drugs and this information was stored in a government office building.
 
 Id
 
 . The
 
 Whalen
 
 plaintiffs argued that patient-identification requirements created a risk of public disclosure and impaired their interests in avoiding disclosure of personal matters and "making important decisions independently."
 
 Id
 
 . at 599, 97 S.Ct. at 877 "After evaluating the security issues regarding the patient-identification requirements of the statute, the Supreme Court upheld the statute, stating that the statute 'does not, on its face, pose a sufficiently grievous threat to either interest to establish a constitutional violation.' "
 
 ACT-UP Triangle v. Comm'n for Health Servs. of the State of N.C
 
 .,
 
 345 N.C. 699
 
 , 710,
 
 483 S.E.2d 388
 
 , 394 (1997) (citing
 
 Whalen,
 

 429 U.S. at 600
 
 , 97 S.Ct. at 877 ).
 

 The most obvious distinction between
 
 Whalen
 
 and the instant case is that the personal medical information at issue in
 
 Whalen
 
 was not directly at issue in an active legal dispute. Unlike the plaintiff-patients in
 
 Whalen
 
 , the Plaintiff here is a workers' compensation claimant who alleges that he is entitled to disability compensation as a result of a workplace accident. Because Plaintiff seeks compensation based on his injury, his privacy interest in avoiding the disclosure of medical information relevant to this claim is lessened, if not waived, due to his status as a party in the present action.
 

 Plaintiff also avers that the statutory scheme in
 
 Whalen
 
 was upheld because of the security measures taken by the government to protect the patient's information.
 
 See
 

 Whalen
 
 ,
 
 429 U.S. at 607
 
 , 97 S.Ct. at 880 (Brennan concurring) ("In this case, as the Court's opinion makes clear, the State's carefully designed program includes numerous safeguards intended to forestall the danger of indiscriminate disclosure.");
 
 see also
 

 ACT-UP Triangle
 
 ,
 
 345 N.C. at 712
 
 ,
 
 483 S.E.2d at 396
 
 ("We conclude that the statutory security provisions are adequate to protect against potential unlawful disclosure which might otherwise render the confidential HIV
 

 *88
 
 testing program constitutionally infirm."). We agree with Plaintiff that the presence of "safeguards" were considered by cases such as
 
 Whalen
 
 and
 
 ACT-UP Triangle
 
 . However, subsequent U.S. Supreme Court decisions have clarified that
 
 Whalen
 
 does not stand for the proposition "that an ironclad disclosure bar is needed to satisfy privacy interests that may be 'rooted in the Constitution.' "
 
 Nat'l Aeronautics & Space Admin
 
 .,
 
 562 U.S. at 157
 
 ,
 
 131 S.Ct. at 762
 
 (alterations omitted) (citing
 
 Whalen
 
 ,
 
 429 U.S. at 605
 
 ,
 
 97 S.Ct. 869
 
 ).
 

 To the extent that
 
 Whalen
 
 is applicable here, we note that there are "safeguards" in place which mitigate against the risk of unwarranted and indiscriminate disclosure of Plaintiff's personal information. N.C.G.S. § 97-92 already exempts Plaintiff's medical records from the Public Records Act, and the risk of any unwarranted disclosure of these records is very low. While an Award will invariably contain some personal medical information, N.C.G.S § 97-84 provides that the Awards of the Industrial Commission are only allowed to include information "pertinent to the questions at issue." Thus, this statute guides the pen of the Commissioners and mitigates against the risk that non-pertinent
 
 *600
 
 personal information will be indiscriminately included in an Award.
 

 In light of the critical role that the Opinion and Award plays in our State's workers' compensation system and our General Assembly's determination that these documents are public records, we conclude that Plaintiff's asserted privacy interests do not outweigh the public interests at stake here. Accordingly, we conclude that the Industrial Commission is not obligated to seal Plaintiff's workers' compensation file, including any Award, due to any constitutional privacy interest.
 

 CONCLUSION
 

 Plaintiff has no statutory or constitutional right to have his entire workers' compensation case file, including any Award, sealed. Accordingly, the order of the Industrial Commission denying Plaintiff's Motion to Seal is affirmed, and the case is remanded for further proceedings consistent with this opinion.
 

 AFFIRMED.
 

 Chief Judge McGEE and Judge CALABRIA concur.
 

 [1]
 

 See Searchable Databases
 
 , N.C. Industrial Commission , http://www.ic.nc.gov/database.html (last accessed 27 August 2018).
 

 [2]
 

 For example, Plaintiff claimed that his record should be sealed because otherwise: (1) his insurance premium rates could increase because he would be considered a greater risk; (2) he could be denied visas for travel to other countries; (3) there is risk that he could be blackmailed; (4) he could be prohibited from adopting a child; (5) he could be prevented from renting an apartment; and (6) the posting of these records could result in cyberbullying, identify theft, and impairment of his ability to obtain lines of credit.
 

 [3]
 

 In re Redmond
 
 ,
 
 369 N.C. 490
 
 , 493,
 
 797 S.E.2d 275
 
 , 277 (2017) ( "[I]t is a 'well-settled rule that a statute's constitutionality shall be determined by the judiciary, not an administrative board.' ").
 

 [4]
 

 North Carolina Industrial Commission,
 
 Fiscal Year 2017 Annual Report
 
 , http://www.ic.nc.gov/2017AnnualReport.pdf (last accessed 27 August 2018).
 

 [5]
 

 I.C. NO. 307020.